## A10A0567. BRYANT v. THE STATE.
### (697 SE2d 860)

BARNES, Presiding Judge.

A jury found Carnel Bryant guilty of armed robbery, kidnapping, aggravated assault, criminal attempt to commit aggravated sodomy, and obstruction of a law enforcement officer. Bryant appeals, challenging the sufficiency of the evidence supporting the kidnapping charge. He also argues that (1) the trial court made several evidentiary errors; (2) the trial court erred in refusing to charge on robbery by intimidation; (3) his sentence was unconstitutional and erroneous; and (4) he received ineffective assistance of counsel at trial. For reasons that follow, we affirm Bryant's convictions, but vacate the sentence imposed for criminal attempt to commit aggravated sodomy and remand for resentencing.

1. In reviewing Bryant's sufficiency challenge, we construe the evidence favorably to the jury's verdict, and Bryant no longer enjoys a presumption of innocence. *Kollie v. State*, 301 Ga. App. 534, 537 (1) (687 SE2d 869) (2009). We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find Bryant guilty beyond a reasonable doubt. Id.

So viewed, the evidence showed that around 7:00 p.m. on March 2, 2006, thirteen-year-old M. V. was walking in a park near his home when a man approached him, asking for money and offering to sell him drugs. M. V. stated that he did not have any money, and the man asked whether M. V. was gay. At that point, M. V. quickly backed away from the man and ran home.

M. V. went into his backyard, where the man appeared approximately ten seconds later and requested a drink of water. When M. V. turned on the garden hose, the man grabbed him from behind and shoved a metal object that M. V. believed to be a gun into his back.

Threatening to shoot, the man ordered M. V. to take him inside the house and give him money. They entered the kitchen through the back door, and M. V.'s mother came into the room. Again threatening to shoot M. V., the man demanded money from his mother. She handed over $2 from her purse, as well as two $20 bills and a crumpled $1 bill from the kitchen cookie jar. The man then exposed his penis, grabbed the mother's head, and forced it down toward his groin. M. V.'s mother jumped back, and Bryant fled from the house.

M. V.'s mother immediately reported the incident to police. Both she and M. V. described the assailant and his clothing to the responding officer, who provided the description to other officers in the area. Less than a mile from the victims' home, a patrol officer spotted Bryant walking down the street, sweating profusely. Although shirtless, he was wearing jeans similar to that described by the victims and was carrying a green shirt that also fit the description. When the officer asked to speak with Bryant, he stated that he "didn't do anything" and ran from the officer. A chase ensued, and Bryant was apprehended a short time later.

Along the route where the officer chased Bryant, he located the green shirt that Bryant had been holding, as well as a red skull cap. The victims identified these items as clothing worn by their assailant. When the police arrested Bryant, they found in his pocket two $20 bills and three $1 bills, one of which was crumpled and, based on its condition, identified by M. V.'s mother as a bill that came from her cookie jar.

Within 45 minutes after the victims reported the crimes, officers took them to the police precinct for separate, one-on-one showups with Bryant. M. V. observed Bryant from a police car and immediately identified him as the assailant. His mother asked for a better view, and she identified Bryant once she was closer to him. Both victims also identified Bryant at trial. Bryant, however, denied any involvement in the crimes.

With respect to M. V., the jury found Bryant guilty of kidnapping and aggravated assault with intent to rob. As to the mother, the jury found him guilty of armed robbery and criminal attempt to commit aggravated sodomy. Jurors also determined that Bryant obstructed a law enforcement officer by fleeing from the patrol officer. On appeal, Bryant challenges the evidence supporting the kidnapping verdict, claiming that the State failed to prove asportation beyond a reasonable doubt. We disagree.

In *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), our Supreme Court adopted a four-part test for determining whether a victim's movement constitutes the asportation necessary for kidnap-

ping or is merely incidental to other criminal activity.[1] Under that test, the following factors must be assessed:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, supra at 702 (1).

Movement occurred here when Bryant forced M. V. from the backyard into the house. Although the movement did not last long, it was not incidental to another criminal offense. The movement took place after the aggravated assault on M. V. and before the crimes against M. V.'s mother. Moreover, by forcing M. V. from the relatively open backyard into the house, Bryant placed the boy in additional danger by isolating him from rescue and exercising further control over him. Based on this evidence, the jury was authorized to find that the State proved the necessary asportation beyond a reasonable doubt. See *Hammond v. State*, 303 Ga. App. 176, 182 (692 SE2d 760) (2010); *Kollie*, supra at 538-540 (2) (a), (b), (d); see also *Garza*, supra at 702 (evil addressed by kidnapping statute is "movement serving to substantially isolate the victim from protection or rescue").

2. Bryant argues that the trial court erred in failing to suppress the identification evidence at trial. He claims that the one-on-one showups conducted by police were impermissibly suggestive, created a substantial likelihood of misidentification, and tainted the subsequent in-court identifications. Again, we disagree.

Although one-on-one showups are inherently suggestive, an identification resulting from a showup "need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure." (Punctuation omitted.) *Fitzgerald v. State*, 279 Ga. App. 67, 68 (1) (630 SE2d 598) (2006). The key issue is whether a substantial likelihood of irreparable misidentification exists. Id. In evaluating this likelihood, a court must consider four factors: (1) the witness' opportunity to view the criminal during the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description; and (4) the length of time between the crime and the showup. Id. The trial court acts as the

---

[1] Following *Garza*, the legislature amended the kidnapping provisions in OCGA § 16-5-40 to clarify the asportation requirement. The amendment applies to crimes committed on or after July 1, 2009. See *Hammond v. State*, 303 Ga. App. 176, 182 (3), n. 3 (692 SE2d 760) (2010).

factfinder in evaluating these factors, and we will not disturb its ruling if supported by any evidence. Id.

The victims testified that they were able to see Bryant clearly during the crimes, the lighting was good, and they were very close to him at several points. M. V.'s contact with Bryant in the park, backyard, and house totaled approximately fifteen minutes, and the encounter with his mother lasted five to ten minutes. The mother also testified that she focused on Bryant's face while he was in her home. The description initially given by the victims, particularly regarding the assailant's clothing, generally fit Bryant. Finally, the showup occurred quickly, within 45 minutes of the crimes.

Given the totality of these circumstances, the trial court was authorized to find that no substantial likelihood of irreparable misidentification existed. Accordingly, it properly denied Bryant's motion to suppress. See *Crawford v. State*, 297 Ga. App. 187, 191 (2) (676 SE2d 843) (2009); *Fitzgerald*, supra at 69.

3. Bryant further claims that the trial court erred in admitting three similar transactions at trial. Specifically, the State offered evidence that on October 2, 1992, Bryant approached a woman in a park with what appeared to be a gun covered by a newspaper. Bryant pointed the weapon at her and demanded money. When the woman stated that she had no money, he threatened to kill her and ordered her to take him to her house. At that point, several people walked by them. The woman asked for help, and Bryant fled, dropping the newspaper and revealing that his weapon was actually a bottle.

Two days later, Bryant approached a woman in a parking lot, hit her, and snatched her purse. Finally, on October 12, 1992, Bryant accosted yet another woman getting out of her car. He pointed what appeared to be a gun covered with a newspaper at her and demanded money. The woman did not have any cash, but she wrote him a check, and Bryant told her to take him to a bank. When Bryant tried to get into her car, she saw that he did not actually have a gun under the newspaper and sprayed him with mace.

Similar transaction evidence is admissible when (1) it is introduced for a proper purpose; (2) sufficient evidence establishes that the defendant committed the independent offense; and (3) a sufficient connection or similarity exists between the independent offense and the crime on trial so that proof of the former tends to prove the latter. *Henderson v. State*, 303 Ga. App. 527, 528 (1) (693 SE2d 896) (2010). On appeal, Bryant argues that the other crimes evidence was not introduced for an appropriate purpose. The trial court, however, admitted the evidence to prove identity, scheme, bent of mind, and course of conduct, all proper purposes for similar transaction evidence. See *Collins v. State*, 273 Ga. 93, 94-95 (2) (538 SE2d 47) (2000).

Bryant also claims that the independent crimes were not sufficiently similar to the offenses at issue here. Particularly with respect to the October 2, 1992 and the October 12, 1992 incidents, we disagree. In each situation, Bryant approached single victims who likely would not fight back — two women and a thirteen-year-old boy. He threatened the victims with what appeared to be a gun, although he did not reveal the weapon. Bryant then sought to move them to another location to obtain money. The prior crimes were relevant to show, among other things, Bryant's bent of mind and course of conduct in robbing vulnerable victims with an apparent gun. The trial court, therefore, did not err in admitting evidence of these two crimes. See *Grimes v. State*, 280 Ga. 363, 364-365 (2) (628 SE2d 580) (2006); *Henderson*, supra; *Cain v. State*, 268 Ga. App. 39, 41-42 (601 SE2d 415) (2004).

As to the October 1992 purse snatching, we question whether sufficient similarity exists between that offense and the crimes against the victims in this case. But given the substantial evidence against Bryant here — including the victims' positive identifications, Bryant's flight when approached by an officer less than a mile from the crime scene, evidence that he discarded clothing identical to that worn by the assailant, and his possession of the exact amount of money stolen from M. V.'s mother — it is highly unlikely that evidence of the purse snatching contributed to the verdict. Any error in admitting this evidence, therefore, was harmless and does not require reversal. See *Moore v. State*, 301 Ga. App. 220, 225 (3) (687 SE2d 259) (2009).

4. Next, Bryant argues that the trial court erred in excluding his alibi evidence at trial. He claimed that on March 2, 2006, he helped an individual named Moses Prescott fix an automobile. At approximately 7:00 p.m. — the time of the crimes — he went to a convenience store with a $50 bill given to him by Prescott. According to Bryant, he purchased a few items and received $43 in change, explaining the amount of money in his pockets at the time of his arrest. To further support this alibi, Bryant also sought to offer testimony from Prescott, who recalled working with Bryant and giving him $50, but could not remember what day this occurred.

Ultimately, the trial court found that Bryant had violated OCGA § 17-16-5 (a) by failing, in bad faith, to give the State timely notice of this alibi defense. It allowed him to testify about the $50 bill allegedly received from Prescott, his trip to the convenience store, and the $43 in change received at the store. But it excluded Prescott's testimony and prohibited Bryant from testifying about *when* he visited the store. See OCGA § 17-16-6 (permitting exclusion of evidence for failure to comply with discovery requirements upon a showing of prejudice and bad faith).

Bryant challenges this ruling on appeal, arguing that (1) he was not required to disclose his alibi defense because the State failed to demand alibi information under OCGA § 17-16-5 (a); and (2) the trial court should have granted the State a continuance before taking the extreme step of excluding evidence. Bryant, however, did not raise these procedural issues below. He never argued that the State failed to comply with OCGA § 17-16-5 or that the only appropriate remedy was a continuance. He has thus waived these claims for purposes of appeal. See *Cordy v. State*, 257 Ga. App. 726, 728 (4) (572 SE2d 73) (2002) (party must raise procedural issues relating to discovery sanctions below so trial court can devise an appropriate remedy under OCGA § 17-16-6).

5. Bryant also contends that the trial court erred in failing to give his requested jury instruction on robbery by intimidation as a lesser included offense of armed robbery. When a defendant submits a written request to charge on a lesser included offense, the instruction must be given if there is any evidence that the defendant is guilty of the lesser offense. *Smith v. State*, 252 Ga. App. 552, 553 (556 SE2d 826) (2001). But "where the [S]tate's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense," the trial court does not err in refusing to give the requested charge. Id.

No error occurred here. A person commits armed robbery when, with intent to commit theft, he takes property from another person "by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). The evidence established that Bryant used a gun or an object appearing to be a gun to rob M. V.'s mother. Both she and M. V. testified that they believed Bryant had a gun, and he threatened to shoot M. V. if his mother did not give him money. Moreover, Bryant did not deny that a gun was used in the crime. On the contrary, he asserted that he "wasn't there," so he had no reason to question the victims' testimony.

Without dispute, therefore, someone robbed M. V.'s mother with a gun or object appearing to be a gun. Although Bryant denied any involvement, he offered no evidence that a weapon or apparent weapon was not used. Accordingly, because the evidence showed the completed offense of armed robbery, Bryant was not entitled to a jury instruction on robbery by intimidation. See *Nesbitt v. State*, 296 Ga. App. 139, 143 (3) (f) (673 SE2d 652) (2009); *Smith*, supra at 553-554.

6. Pursuant to OCGA § 17-10-7 (b), the trial court sentenced Bryant to two terms of life without parole for armed robbery and kidnapping. It also imposed a 30-year sentence for criminal attempt to commit aggravated sodomy. Bryant challenges these sentences on appeal, arguing that the two life sentences were cruel and unusual

and that the attempt to commit aggravated sodomy conviction authorized a maximum term of ten years imprisonment.

(a) With respect to the constitutional challenge to the life sentences, we note that Bryant initially filed his appeal in the Supreme Court of Georgia. The Supreme Court, however, transferred the case to this Court after finding that it had previously rejected the exact constitutional claim raised by Bryant. See *Ortiz v. State*, 266 Ga. 752, 753-754 (2) (a) (470 SE2d 874) (1996). We are bound by the Supreme Court's determination that this issue has been resolved adversely to Bryant. See *Buchan v. Hobby*, 288 Ga. App. 478, 479-480 (654 SE2d 444) (2007); *Conner v. State*, 205 Ga. App. 564, 565 (1) (422 SE2d 872) (1992).

(b) The State concedes, and we agree, that Bryant was subject to a maximum sentence of ten years confinement for criminal attempt to commit aggravated sodomy.[2] Accordingly, Bryant's 30-year sentence must be vacated and the case remanded for resentencing on this count.

7. In his final claim of error, Bryant asserts that he received ineffective assistance of counsel at trial. To succeed on this claim, he must show that defense counsel's performance was deficient and that the deficiency "prejudiced him such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." *Jones v. State*, 266 Ga. App. 679, 682 (2) (598 SE2d 65) (2004).

(a) Bryant first argues that trial counsel was deficient in failing to object to the 30-year sentence imposed for criminal attempt to commit aggravated sodomy. Given our decision in Division 6 (b), this claim is moot.

(b) Bryant also complains that trial counsel failed to adequately (1) litigate the motion to suppress identification evidence, (2) challenge introduction of the similar transaction evidence, and (3) advocate for a jury charge on robbery by intimidation. As found above, however, the trial court properly admitted the identification testimony and similar transaction evidence, and it did not err in refusing to charge on robbery by intimidation. Bryant, therefore, cannot demonstrate ineffective assistance on these grounds. See *Conyers v. State*, 302 Ga. App. 95, 99 (3) (690 SE2d 233) (2010) (failure to make futile objection or motion does not constitute ineffective assistance).

(c) Lastly, Bryant raises an ineffective assistance claim with

---

[2] In 2007, the maximum penalty for criminal attempt to commit aggravated sodomy was increased from ten years to thirty years. Compare OCGA § 16-4-6 (a) (2007) with OCGA § 16-4-6 (a) (2008). The increased sentence, however, applies only to crimes committed on or after July 1, 2007. See Ga. L. 2007, p. 501, § 2.

respect to the alibi issue addressed in Division 4. He contends that trial counsel should have argued below that the State's failure to demand alibi information, as well as its failure to seek a continuance to investigate his alibi, barred exclusion of the alibi evidence. Even if counsel performed deficiently in this regard, we find no basis for reversal.

As noted in Division 4, the trial court did not exclude *all* of Bryant's alibi information. It permitted him to testify about the money allegedly received from Prescott, and he provided an explanation for the $43 that police found in his pocket. Although he could not testify that he was at the convenience store when the crimes occurred, he denied any involvement in the crimes. Moreover, he asserted that after working "all day" with Prescott, he went to the convenience store to buy beer for them and was arrested while walking toward Prescott's house. An inference was raised, therefore, that he was somewhere else — such as going to, from, or inside the store — at the time of the crimes.

Clearly, the jury rejected Bryant's explanation, as well as the inferences raised by it. And given the extensive evidence against Bryant, including testimony that the crumpled dollar bill in his possession came from the victims' cookie jar, we find no reasonable probability that more specific testimony about the alibi time line or vague testimony from Prescott that he gave Bryant $50 at some point would have altered the trial result. Bryant, therefore, cannot show the prejudice necessary to establish ineffective assistance of counsel. See *Jones*, supra at 683-684.

*Judgment of conviction affirmed, sentence vacated in part, and case remanded with direction. Bernes, J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 1, 2010 — 

*Steven L. Sparger*, for appellant.
*Larry Chisolm, District Attorney, Christine S. Barker, Assistant District Attorney*, for appellee.

