## A10A2226. HALL v. THE STATE.
(709 SE2d 348)

DILLARD, Judge.

Following a jury trial, Stephen Mark Hall was convicted of kidnapping with bodily injury, kidnapping, terroristic threats, cruelty

---

[3] Id.

to children, cruelty to children in the third degree, five counts of battery, and possession of a firearm during the commission of a felony.[1] Hall argues on appeal that the evidence of asportation was insufficient to support his kidnapping convictions, and further that the trial court erroneously denied his request to charge the jury on the lesser-included offense of false imprisonment. We find the evidence sufficient to support Hall's kidnapping convictions, but are constrained to conclude that the trial court erred in failing to charge the jury on the lesser-included offense of false imprisonment. And because we cannot say as a matter of law that this error was harmless, we are likewise constrained to reverse Hall's kidnapping convictions.[2]

Viewed in the light most favorable to the jury's guilty verdict,[3] the evidence shows that on the afternoon of October 14, 2005,[4] the victim and her two-year-old granddaughter were washing their hands in the ladies' restroom at Walmart when Hall stormed out of one of the stalls with a stun gun, which he then began firing into the victim's neck while demanding that she join him in a restroom stall. The victim adamantly refused to enter the stall and a violent struggle ensued. Over the course of approximately 15 minutes, the victim desperately attempted to exit the restroom with her granddaughter while Hall was physically fighting the victim on the restroom floor to prevent her from reaching the door. The terrified child was crying hysterically and "following [the victim] every step [she] took" during the altercation. At some point, Hall began threatening the victim with a large knife while continually attempting to force her into the stall, and on several occasions he waved the knife in the child's face while insisting that the victim keep the child quiet. Hall also punctured the victim's leg with the knife during the scuffle.

This commotion gained the attention of several customers and Walmart employees, who heroically attempted to force their way into the restroom. Walmart management also joined in the effort after being alerted via radio of the incident by an employee who was inside the restroom and had locked herself into a stall when the attack on

---

[1] Hall was also charged with and found guilty on four counts of aggravated assault and three additional counts of battery, but the trial court did not enter judgment of conviction on those charges, which merged into the kidnapping-with-bodily-injury conviction and the cruelty-to-children conviction, respectively.

[2] Hall has not challenged his convictions on the remaining offenses, which remain intact.

[3] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] Although Hall filed a timely motion for new trial following his March 2007 conviction, the trial court did not issue an order denying that motion until June 2010. Hall then filed a timely notice of appeal from the trial court's 2010 order, which is presently before this Court.

the victim and her granddaughter began.[5] Hall, however, forcibly held the door closed while physically preventing the victim or child from reaching it.

Eventually, one of the good Samaritans succeeded in opening the restroom door just enough to stick his arm through the crack, giving the victim the opportunity to thrust her granddaughter into his reach. The man successfully removed the child from the restroom and then attempted to help the victim in the same manner. As the rescuer grabbed the victim's ankle and tried to pull her toward the door, another violent struggle ensued as Hall attempted to physically wrest the victim from the man's hold to prevent her escape. Indeed, at trial the victim vividly described how Hall nearly "pulled [her arms] out of the sockets" and imprinted a tennis-shoe-shaped bruise onto her leg in his efforts to keep her from reaching the door. Thankfully, the victim eventually broke free of Hall's grasp and ran to safety.

Having been foiled in his attempt to force the victim into the stall, Hall bolted out of the restroom, armed with the stun gun and pepper spray, and threatened anyone who attempted to stop him from leaving the store. When it became clear that the crowd assembling around him had no intention of letting him flee the premises, Hall began spraying the pepper spray directly into their faces. As those in the crowd struggled to see and began gasping for air, Hall fled the store, spraying all who he encountered on his way out, including a five-year-old girl.

Unfortunately for Hall, a brave reservist with the United States Marine Corps happened to be in the parking lot, and—after being informed of the transpiring events—he stopped Hall dead in his tracks, holding him at gunpoint until law-enforcement officers arrived. Hall was then arrested, and found to be in possession of three sets of handcuffs, a collapsible metal baton, and brass knuckles—in addition to the stun gun and pepper spray. Thereafter, Hall was convicted of kidnapping with bodily injury, kidnapping, terroristic threats, cruelty to children, cruelty to children in the third degree, five counts of battery, and possession of a firearm during the commission of a felony. This appeal follows.

1. Hall first argues that the evidence is insufficient to sustain his kidnapping convictions because the State failed to prove the necessary element of asportation. Specifically, he argues that the movement at issue was incidental to his aggravated assault on the victim.[6]

---

[5] The employee had actually been investigating what she believed to be a shoplifter after hearing suspicious noises coming out of the stall where Hall had been hiding.

[6] The four counts of aggravated assault on which Hall was tried and found guilty included two counts based upon his stunning the victim with the stun gun, one count based upon his

We disagree.

Under Georgia law, a person commits the crime of kidnapping when he "abducts or steals away [i.e., asports] another person without lawful authority or warrant and holds such other person against his or her will."[7] At the time of Hall's crime in 2005 and his subsequent conviction in 2007, the law permitted the necessary element of asportation to be proven by any evidence that the victim was moved, however slight.[8] In *Garza v. State*,[9] however, our Supreme Court adopted a new four-part test to aid in the determination of whether the movement at issue constitutes asportation:

(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[10]

In so holding, the *Garza* Court explained that the purpose of the foregoing test is to assess "whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address—i.e., movement serving to substantially isolate the victim from protection or rescue—or merely a criminologically insignificant circumstance attendant to some other crime."[11]

Here, we have little trouble concluding that Hall's movement of both the victim and her granddaughter was sufficient to sustain the

threatening conduct with the knife, and the last count based upon his actual puncturing of the victim's leg with the knife.

[7] OCGA § 16-5-40 (a).

[8] *See generally Lyons v. State*, 282 Ga. 588, 591 (1) (652 SE2d 525) (2007) ("The requirement of asportation to prove kidnapping is satisfied if there is movement of the victim, however slight that movement is." (citation omitted)); *Mullins v. State*, 280 Ga. App. 689, 690 (1) (634 SE2d 850) (2006) ("[T]he distance which a kidnapper abducts his victim is without legal significance." (citation and punctuation omitted)).

[9] 284 Ga. 696, 701-702 (1) (670 SE2d 73) (2008). *Garza* was decided after Hall was convicted but before he filed his notice of appeal. Thus, according to the "pipeline" rule, *Garza* applies to this case. *See, e.g., Freeman v. State*, 269 Ga. 337, 339 (1) (c) (496 SE2d 716) (1998); *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992). Following our Supreme Court's decision in *Garza*, the Georgia General Assembly amended the kidnapping statute "to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense," then further defined what actions would not be incidental to another offense. *Wright v. State*, 300 Ga. App. 32, 34 (1) n. 1 (684 SE2d 102) (2009) (citation and punctuation omitted); *see* Ga. L. 2009, Act 88, § 1. The amended statute applies only to crimes committed on or after the revised statute's effective date, July 1, 2009. *See* OCGA § 1-3-4. Because the crime in the case *sub judice* occurred in October 2005, the amended statute is not applicable.

[10] *Garza,* 284 Ga. at 702 (1) (citation and footnote omitted).

[11] *Id.* (punctuation omitted).

asportation element of his kidnapping convictions.[12] The victim testified that during this terrifying episode, they were moving back and forth in the restroom as Hall furiously attempted to force her into the stall and she desperately attempted to reach the door. That the movement may have been of a minimal duration is of little consequence when viewed in the context of the entire violent episode.[13] Indeed, the vast majority of Hall's vicious conduct in relation to the victims—i.e., physically forcing the grandmother (and, by default, the grandchild, who was desperate to remain with her) toward the stall; forcibly preventing the victims from reaching the door while refusing to allow others to enter; and actively tearing the grandmother away from those attempting to render her assistance—occurred independently of the aggravated assaults with the stun gun and the knife, and posed a significant danger to the victim and her granddaughter in a way wholly independent of the dangers posed by his other offenses.[14]

Most significantly, the movement further enhanced Hall's control over both the victim and her granddaughter, "substantially isolating" them from the protection of the rescuers who were vigorously trying to reach them on the other side of the restroom door—thus representing the exact "evil" the kidnapping statute was intended to address.[15] Under these facts, it is of little consequence that Hall's movement of the granddaughter was an indirect corollary

---

[12] Indeed, in Hall's brief he concedes that the granddaughter's movements largely mirrored those of the victim, and that the granddaughter was "clinging to" the victim throughout the ordeal.

[13] *See, e.g.*, *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (finding evidence of asportation sufficient despite concluding that the movement of the victims was of minimal duration); *Abernathy v. State*, 299 Ga. App. 897, 900 (1) (685 SE2d 734) (705 SE2d 906) (2009) ("Not all of the elements under the [*Garza*] test must favor the State in order to prove asportation." (citation and footnote omitted)).

[14] *See generally Henderson*, 285 Ga. at 245 (5) (moving victims into a different room after demanding at gunpoint that they empty their pockets was movement after and not incidental to the armed robbery); *Williams v. State*, 307 Ga. App. 675, 678 (1) (705 SE2d 906) (2011) (aggravated assault was completed when defendant pointed gun at victim and grabbed her, rendering his subsequent movement of her into the bathroom independent of that crime); *Humphries v. State*, 305 Ga. App. 69, 72 (699 SE2d 62) (2010) (dragging victim down a hill was not an inherent part of the aggravated assault or other crimes that followed); *Bryant v. State*, 304 Ga. App. 755, 757 (1) (697 SE2d 860) (2010) (forcing victim into the house was done after the aggravated assault of sticking a gun into his neck had been completed); *Dixon v. State*, 303 Ga. App. 517, 519 (1) (693 SE2d 900) (2010) (forcing victim into hotel room occurred before aggravated assault and was not inherent part of that offense).

[15] *See generally Williams*, 307 Ga. App. at 678 (1) (forcing victim into the bathroom created additional danger to her by enhancing defendant's control over her); *Humphries*, 305 Ga. App. at 72 (movement down hill enhanced the danger to the victim and reduced the possibility of her obtaining help from others); *Bryant*, 304 Ga. App. at 757 (1) (moving victim from outside to inside house placed him in additional danger by isolating him from rescue); *Dixon*, 303 Ga. App. at 519 (1) (moving victim into defendant's hotel room enhanced his control over her and isolated her from contact with the other guests).

of his attack on the grandmother because its impact under *Garza* was the same. As such, we conclude that the evidence was sufficient to sustain Hall's kidnapping convictions.

2. Hall next contends that the trial court erred in denying his request to charge the jury on false imprisonment as a lesser-included offense of the crime of kidnapping. In Georgia, "[a] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense."[16] Moreover, the crime of false imprisonment is committed "when, in violation of the personal liberty of another, [a defendant] arrests, confines, or detains such person without legal authority."[17] And significantly, the only difference between the crime of kidnapping and the crime of false imprisonment is the element of asportation.[18]

Here, because we conclude that there is at least some evidence, particularly in light of the new law as set forth in *Garza*, that the jury could have convicted Hall of the lesser-included offense of false imprisonment, the trial court erred in refusing to charge on that crime.[19] Further, we cannot say that the evidence was so overwhelming as to render the failure to give the charge harmless.[20] Consequently, we are constrained to reverse Hall's kidnapping convictions as to both the victim and the child.[21] We note, however, that because we have concluded, as set forth in Division 1, that the evidence was otherwise sufficient to support Hall's convictions on those crimes, the State may retry Hall without violating the Double Jeopardy Clause.[22]

3. In light of our holding in Division 2, we need not address Hall's remaining enumerations of error with respect to the jury

---

[16] *Edwards v. State*, 264 Ga. 131, 132-33 (442 SE2d 444) (1994) ("Where a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense." (citation and punctuation omitted)); *Stovall v. State*, 216 Ga. App. 138, 141 (5) (453 SE2d 110) (1995).

[17] *See* OCGA § 16-5-41 (a).

[18] See *Ellis v. State*, 181 Ga. App. 630, 633 (5) (353 SE2d 822) (1987).

[19] We note that this case was tried consistent with the common and settled understanding of asportation that prevailed at the time of trial and, under the law as it then existed, our conclusion with respect to the trial court's failure to give the charge may have differed.

[20] *Compare generally Braley v. State*, 276 Ga. 47, 53 (30) (572 SE2d 583) (2002) (any error in failing to give charge on the lesser-included offense was rendered harmless by overwhelming evidence of defendant's guilt on the crime charged); *Edwards v. State*, 264 Ga. at 133 (same); *Stephens v. State*, 232 Ga. App. 738, 740 (4) (503 SE2d 643) (1998) (same); *Mitchell v. State*, 221 Ga. App. 183, 184 (3) (470 SE2d 771) (1996) (same).

[21] *See generally Gibson v. State*, 265 Ga. App. 325, 328 (593 SE2d 861) (2004); *Shaw v. State*, 238 Ga. App. 757, 759 (1) (519 SE2d 486) (1999).

[22] *See generally In the Interest of B. R.*, 289 Ga. App. 6, 9 (2) (656 SE2d 172) (2007); *In the Interest of D. D.*, 287 Ga. App. 512, 515 (2) (b) (651 SE2d 817) (2007). *See also* U. S. Const. amend. V.

charges on kidnapping.

*Judgment affirmed in part and reversed in part. Barnes, P. J., concurs. Blackwell, J., concurs in judgment only.*

DECIDED MARCH 28, 2011.

*Peter D. Johnson*, for appellant.
*Richard A. Mallard, District Attorney, Daphne H. Jarriel, Assistant District Attorney*, for appellee.