### A11A0186. CURTIS v. THE STATE.
(714 SE2d 666)

DILLARD, Judge.

Following a jury trial, Korey Bernard Curtis was convicted of aggravated assault with intent to murder; kidnapping with bodily injury; aggravated battery; and hindering a person making an emergency telephone call. Curtis argues on appeal that the evidence was insufficient to support his convictions and that the trial court erred in denying his request to charge the jury on false imprisonment as a lesser-included offense of kidnapping. We find the evidence sufficient to sustain Curtis's convictions, but are nonetheless constrained to hold that the trial court erred in failing to charge the jury on the lesser-included offense of false imprisonment. Because we cannot say that this error was harmless as a matter of law, we must reverse Curtis's kidnapping conviction.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that on the morning of March 7, 2008, the victim, Curtis's girlfriend, was ill and had been directed by her supervisor to stay home from work. As she retreated to her bedroom to take some medicine, Curtis, apparently suspicious of her motives for remaining

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

home, followed her into the bedroom and stated, "You're going to die today, you don't need your medicine." Curtis then balled up his fist and punched the victim in the face. After the victim hit Curtis back, Curtis struck her on the head with a heavy metal ashtray, breaking the skin on her scalp. Curtis, who was wearing boots, then unleashed on the victim a brutally violent attack, during which he repeatedly punched and kicked her face, head, and body. Curtis also choked the victim while saying, "I should kill you."

The victim eventually managed to break free from Curtis and ran out of the bedroom, through the house, and out the front door, screaming for someone to help her. Curtis caught the victim as she was attempting to escape, however, and dragged her back inside of the house by her hair. In the process of dragging her, Curtis scraped the skin off the victim's knees.

Once inside, Curtis broke the wooden handle off of a broom and menacingly stated, "I'm fixing to torture your ass now." He then proceeded to beat the victim about her face, head, and body with the splintered broomstick and the trunk of an artificial tree. Curtis also hit the victim in the face with metal picture frames taken from the living room table, cutting her with the frames' glass as it shattered upon impact. At some point during the beating, the victim's front tooth was knocked out.

The victim made her way back to the bedroom in search of a cell phone to call 911, but Curtis located the phone first and broke it in half. He then smashed the house phone with the broomstick. As they returned to the living room, the victim picked up the pictures of her children that had fallen from the picture frames and told them, "I love y'all because I'm fixing to die." Curtis responded "[d]amn right," as he continued his violent assault on the victim.

The victim, an epileptic, eventually feigned a seizure, prompting Curtis to cease the attack. Curtis moved her from the floor to the sofa, gave her a towel, and told her to shower. He then went outside of the house and flagged down a passing public works employee, who he asked to call 911 because "somebody beat his girlfriend." After doing so, Curtis returned to the house, changed his bloody clothes, and began staging a break-in by opening one of the windows and pushing in the screen. He ordered the victim to tell the police that someone had broken into the house, and he threatened to kill both her and her children if she reported what actually transpired.

As they waited for the police, Curtis's co-workers arrived to give him a ride to work. He went out to their vehicle and, although he originally told them about a break-in, he ultimately explained that he would not be going to work because he had "beat [the victim's] ass" and was waiting on the police.

The police and paramedics finally arrived, but not before Curtis

again struck the victim in the head with the artificial tree trunk. As the paramedics entered the house to treat the victim, Curtis met the police officers outside and reported that an intruder had assaulted his girlfriend.

One of the officers then entered the house and described the "horrific" sight of the victim as she lay on the couch struggling to breathe because her airway was full of blood. The officer observed blood and broken glass throughout the house. When he asked the victim who had injured her, she identified Curtis as her attacker.

Curtis was arrested and, as he was being booked into the jail, commented that he "wish[ed] he'd have went ahead and killed [the victim]." In an interview with the investigating detective, Curtis disparaged the victim's character but maintained that someone else had perpetrated the attack. The detective later retrieved Curtis's bloody clothes from the trash can at the house.

The victim was taken to the emergency room, where her entire body was x-rayed and she underwent surgery to repair her lips and mouth. Several months later, she received an artificial tooth implant to replace the tooth Curtis knocked out during his violent assault of her. The jury was shown pictures of her injuries and of the condition of the home following the incident.

Curtis was subsequently convicted of aggravated assault with intent to murder; kidnapping with bodily injury; aggravated battery; and hindering a person making an emergency telephone call. This appeal follows.

1. The evidence set forth supra was sufficient to sustain Curtis's convictions of aggravated assault with intent to murder;[2] kidnapping with bodily injury;[3] aggravated battery;[4] and hindering a person making an emergency telephone call.[5]

Nevertheless, Curtis specifically challenges the evidence supporting his kidnapping conviction, asserting that the State failed to prove the essential element of asportation. We disagree.

---

[2] OCGA § 16-5-21 (a) (1) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith intent to murder[.]"); see OCGA § 16-5-20 (a) (defining assault).

[3] OCGA § 16-5-40 (a) ("A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."). Subsection (d) of the statute enhances a defendant's sentence if the person kidnapped receives bodily injury.

[4] OCGA § 16-5-24 (a) ("A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.").

[5] OCGA § 16-10-24.3 ("Any person who verbally or physically obstructs, prevents, or hinders another person with intent to cause or allow physical harm or injury to another person from making or completing a 9-1-1 telephone call or a call to any law enforcement agency to request police protection or to report the commission of a crime is guilty of a misdemeanor[.]").

Georgia law provides that a person commits the crime of kidnapping if he or she "abducts or steals away [i.e., asports] another person without lawful authority or warrant and holds such other person against his or her will."[6] At the time of Curtis's crime in March 2008 and his subsequent conviction in August 2008, the law of this state permitted the necessary element of asportation to be proven by any evidence that the victim had been moved, however slight.[7] In November 2008, however, slight evidence was deemed by our Supreme Court to be insufficient proof of asportation. In *Garza v. State*,[8] the Supreme Court overruled prior case law and set forth a new four-part test to aid in the determination of whether the asportation element was met:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[9]

The Court in *Garza* explained that its purpose in adopting the test was to assess

> whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address —i.e., movement serving to substantially isolate the victim from protection or rescue—or merely a criminologically insignificant circumstance attendant to some other crime.[10]

---

[6] OCGA § 16-5-40 (a).

[7] *See generally Lyons v. State*, 282 Ga. 588, 591 (1) (652 SE2d 525) (2007) ("The requirement of asportation to prove kidnapping is satisfied if there is movement of the victim, however slight that movement is." (citation omitted)), *overruled by Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008).

[8] 284 Ga. at 701-02 (1).

[9] *Garza*, 284 Ga. at 702 (1) (citation and footnote omitted). *Garza* was decided after Curtis was convicted but while his case was pending appeal. Thus, according to the "pipeline" rule, *Garza* applies to this case. *See, e.g., Hammond v. State*, 289 Ga. 142, 143-44 (1) (710 SE2d 124) (2011) (holding that *Garza* applies retroactively); *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992). Following our Supreme Court's decision in *Garza*, the Georgia General Assembly amended the kidnapping statute "to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense," and then further defined what actions would not be incidental to another offense. *Wright v. State*, 300 Ga. App. 32, 34 (1) n. 1 (684 SE2d 102) (2009) (citation and punctuation omitted); *see* Ga. L. 2009, p. 331, § 1. The amended statute applies only to crimes committed on or after the revised statute's effective date, July 1, 2009. *See* OCGA § 1-3-4; *Hammond*, 289 Ga. at 143-44 (1). Because the crime in the case *sub judice* occurred in March 2008, the amended statute is not applicable.

[10] *Garza*, 284 Ga. at 702 (1) (citation and punctuation omitted).

Here, we conclude that Curtis's act of dragging the victim by her hair inside the house to begin his attack anew, after she temporarily managed to escape and was screaming for help, was sufficient evidence of asportation to support his conviction. Although the movement was arguably of minimal duration,[11] this act was not an inherent part of the violent attack that the victim had just endured.[12] Instead, and significantly, it allowed Curtis to reassert his control over the victim and to reinitiate his savage beating without interference, further isolating her from rescue and increasing her risk of harm.[13] Consequently, the movement was not "merely a criminologically insignificant circumstance attendant to some other crime,"[14] but rather was representative of the "evil" that the kidnapping statute was designed to address.

2. Curtis further argues that the trial court erred in denying his request to charge the jury on false imprisonment as a lesser-included offense of kidnapping. We are constrained to agree.

Georgia law requires that a written request to charge a lesser-included offense be given "if there is any evidence that the defendant is guilty of the lesser included offense."[15] The crime of false impris-

---

[11] *See, e.g., Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (finding evidence of asportation sufficient despite concluding that the movement of the victims was of minimal duration); *Abernathy v. State*, 299 Ga. App. 897, 900 (1) (685 SE2d 734) (2009) ("Not all of the elements under the [*Garza*] test must favor the State in order to prove asportation." (citation and footnote omitted)).

[12] *See generally Hall v. State*, 308 Ga. App. 858, 862 (1) (709 SE2d 348) (2011) (actively preventing the victims from reaching rescue was movement that occurred independently of the aggravated assaults); *Henderson*, 285 Ga. at 245 (5) (moving victims into a different room after demanding at gunpoint that they empty their pockets was movement and not incidental to the armed robbery); *Williams v. State*, 307 Ga. App. 675, 678 (1) (705 SE2d 906) (2011) (aggravated assault was completed when defendant pointed gun at victim and grabbed her, rendering his subsequent movement of her into the bathroom independent of that crime); *Humphries v. State*, 305 Ga. App. 69, 72 (1) (699 SE2d 62) (2010) (dragging victim down a hill was not an inherent part of the aggravated assault or other crimes that followed); *Bryant v. State*, 304 Ga. App. 755, 757 (1) (697 SE2d 860) (2010) (forcing victim into the house was done after the aggravated assault of sticking a gun into his neck had been completed); *Dixon v. State*, 303 Ga. App. 517, 519 (1) (693 SE2d 900) (2010) (forcing victim into hotel room occurred before aggravated assault and was not inherent part of that offense).

[13] *See generally Hall*, 308 Ga. App. at 862 (1) (blocking the door from would-be rescuers substantially isolated the victims and heightened their risk of harm); *Williams*, 307 Ga. App. at 678 (1) (forcing victim into the bathroom created additional danger to her by enhancing defendant's control over her); *Humphries*, 305 Ga. App. at 72 (1) (movement down hill enhanced the danger to the victim and reduced the possibility of her obtaining help from others); *Bryant*, 304 Ga. App. at 757 (1) (moving victim from outside to inside house placed him in additional danger by isolating him from rescue); *Dixon*, 303 Ga. App. at 519 (1) (moving victim into defendant's hotel room enhanced his control over her and isolated her from contact with the other guests).

[14] *Garza*, 284 Ga. at 702 (1) (citation and punctuation omitted).

[15] *Edwards v. State*, 264 Ga. 131, 132-33 (442 SE2d 444) (1994) (citation and punctuation omitted) (further holding that, "[w]here a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the

onment is committed "when, in violation of the personal liberty of another, [a defendant] arrests, confines, or detains such person without legal authority."[16] Significantly, the only difference between the crime of kidnapping and the crime of false imprisonment is the element of asportation.[17]

Here, in light of the new standard set forth in *Garza*, there is some evidence from which the jury could have convicted Curtis on the lesser-included offense of false imprisonment.[18] Moreover, we cannot say that the evidence of kidnapping in this case was so overwhelming so as to render the trial court's failure to give the charge harmless.[19] It follows that we must reverse Curtis's kidnapping conviction.[20] We note, however, that our holding in Division 1 that the evidence was sufficient to sustain Curtis's conviction authorizes the State to retry Curtis without violating the Double Jeopardy Clause.[21]

3. Our holding in Division 2 renders it unnecessary to reach Curtis's remaining enumeration of error.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 13, 2011.

*Timothy L. Eidson*, for appellant.
*Denise D. Fachini, District Attorney, Barbara A. Becraft, Assistant District Attorney*, for appellee.

---

jury on that offense"); *Stovall v. State*, 216 Ga. App. 138, 141 (5) (453 SE2d 110) (1995).

[16] OCGA § 16-5-41 (a).

[17] *See Ellis v. State*, 181 Ga. App. 630, 634 (5) (353 SE2d 822) (1987).

[18] We note that this case was tried consistent with the common and settled understanding of asportation that prevailed at the time of trial and, under the law as it then existed, our conclusion with respect to the trial court's failure to give the charge may have differed. *See* Division 1, *supra*.

[19] *Compare generally Braley v. State*, 276 Ga. 47, 53 (30) (572 SE2d 583) (2002) (any error in failing to give charge on the lesser-included offense was rendered harmless by overwhelming evidence of defendant's guilt on the crime charged); *Edwards*, 264 Ga. at 133 (same); *Stephens v. State*, 232 Ga. App. 738, 740 (4) (503 SE2d 643) (1998) (same); *Mitchell v. State*, 221 Ga. App. 183, 184 (3) (470 SE2d 771) (1996) (same).

[20] *See, e.g., Hall*, 308 Ga. App. at 862 (2); *see also Gibson v. State*, 265 Ga. App. 325, 328 (593 SE2d 861) (2004); *Shaw v. State*, 238 Ga. App. 757, 759 (1) (519 SE2d 486) (1999).

[21] *See generally Hall*, 308 Ga. App. at 862 (2); *In the Interest of B. R.*, 289 Ga. App. 6, 9 (2) (656 SE2d 172) (2007); *In the Interest of D. D.*, 287 Ga. App. 512, 515 (2) (b) (651 SE2d 817) (2007); *see also* U. S. Const. amend. V.