**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

July 15, 2025

# In the Court of Appeals of Georgia

A25A1093. JONKER v. THE STATE.

MERCIER, Judge.

Following a jury trial, Justin Jonker appeals his conviction for cruelty to children in the first degree relating to leg injuries suffered by his two-month-old son, B. J. Specifically, Jonker contends that the evidence was insufficient to support the verdict; that the trial court erred by excluding the testimony of his wife, Luisa, who invoked her Fifth Amendment privilege against self-incrimination; and that he received constitutionally ineffective assistance of counsel. Although we find that the evidence was sufficient to support the verdict, we must reverse Jonker's conviction based on trial counsel's ineffective assistance, as more fully discussed below.

The record shows that Jonker and Luisa were jointly indicted for cruelty to children in the first degree for causing B. J. to suffer a brain injury (Count I); aggravated battery – family violence for causing B. J.'s brain injury (Count II); aggravated battery – family violence for causing B. J. to suffer a rib injury (Count V); cruelty to children in the second degree for failing to seek medical attention for B. J.'s rib injury (Count VI); aggravated battery – family violence for causing a rib injury to another one of the couple's childen, C. J. (Count VII); and cruelty to children in the second degree for failing to seek medical attention for C. J.'s rib injury (Count VIII). Jonker was solely indicted for an additional count of cruelty to children in the first degree for causing bruising injuries to B. J.'s legs (Count IX).[1] Specifically, Count IX alleged that Jonker "did maliciously cause [B. J.] . . . excessive physical pain by pressing his hand on said child's legs, causing bruising[.]"

On December 5, 2022, Luisa pled guilty to cruelty to children in the second degree (Count IV), and the State nolle prossed the remaining charges against her on the same day. Luisa thereafter asserted her Fifth Amendment privilege against self-incrimination, and the trial court excused her from testifying and quashed Jonker's

---

[1] As they related to Jonker, Count III and Count IV were dismissed prior to trial.

subpoena seeking her testimony.[2] Jonker was tried before a jury, and he was acquitted of all charges except Count IX. Jonker was subsequently sentenced to 20 years, comprised of 15 years in prison with the balance to be served on probation. Thereafter, Jonker filed a motion for new trial, which the trial court denied. This appeal followed.

1. Jonker first contends that the evidence was insufficient to support the jury's verdict. We disagree.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). This Court does not weigh the evidence or judge the credibility of witnesses; instead, we review the evidence in the light most favorable to the prosecution in order to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted).

---

[2] The trial court considered that, at the time of Jonker's trial in February 2023, the State retained a limited amount of time to re-indict Luisa on the nolle prossed counts if it chose to do so, see OCGA § 17-3-3 (extending the statute of limitation for prosecution an additional six months "from the time the nolle prosequi is entered"), and, since this placed Luisa under a threat of possible future prosecution, she was entitled to the protections of her Fifth Amendment privilege.

Considered in this light, the evidence presented at trial indicates that, sometime after midnight on September 7, 2017, Jonker took B. J. to Children's Healthcare of Atlanta Scottish Rite Hospital. Jonker told hospital staff that, earlier in the day, B. J. had "some twitching of the body[,] was . . . vomiting[,] and had explosive diarrhea[,]" and Jonker provided a cell phone video showing the baby's twitching behavior. Dr. Tamika Bryant, a pediatrician on call who specializes in child abuse cases, examined B. J. and questioned Jonker about B. J.'s symptoms. Jonker explained that, on the prior afternoon, B. J. began vomiting and had explosive diarrhea following his feeding. Jonker also told hospital staff that, around 6:00 p.m. on September 6, he had taken B. J. to an urgent care facility. The doctor at that facility determined that B. J. was "normal," and sent B. J. back home with Jonker. Jonker reported, however, that B. J. "continued to have diarrhea and episodes of vomiting from the mouth and nose." B. J.'s continued symptoms led Jonker to seek further medical assistance, despite the findings of the urgent care doctor.

When B. J. was being examined at Scottish Rite Hospital, staff noticed red marks and bruising on B. J.'s thighs, and some noted that the bruising resembled

handprints.[3] When questioned about the marks at the hospital, Jonker explained that he believed that he might have caused the bruising on B. J.'s legs when he held him down and tried to change the child's diaper following a bout of diarrhea.

Following a full examination and x-rays at the hospital, it was determined that B. J. was suffering from "multiple injuries, including injury to his brain, subdural hemorrhages, hypoxis ischemic injury, a rib fracture, [and] bruising[.]" Testimony from pediatricians indicated that the brain injuries could have occurred up to three days prior to the date that Jonker was caring for B. J., and the rib injury was determined to be a "healing fracture" that could have been a week old (or more).

On the day after B. J. was taken to the hospital, Jonker agreed to speak with Forsyth County police, and his interview was videotaped (and subsequently played for the jury at trial). In this interview, Jonker explained that, on September 6, he was caring for B. J. and B. J.'s three siblings while his wife, Luisa, attended an appointment with her therapist. Jonker recalled that B. J., a triplet who had been born premature, began vomiting and having diarrhea following a feeding. Jonker placed B. J. on the changing table to clean him and replace his soiled diaper. B. J. gurgled, and he

---

[3] The doctor who earlier examined B. J. at the urgent care facility testified that there was no bruising on B. J.'s legs at that time.

squirmed on the table, arching his back to breathe. Fearful that B. J. was going to cause himself to fall off the changing table, Jonker held onto B. J.'s legs to prevent that from happening. Jonker maintained throughout this interview that all of his actions were to save B. J., that he was never angry with the baby, and that he had no intention to harm any of his children.

The State, however, also elicited testimony from pediatricians that raised questions about Jonker's version of events. Specifically, there was testimony that an eight-week-old infant would not have developed sufficient motor skills to turn over without assistance. There was also testimony that a baby of B. J.'s age would not be able to fight against an adult or hurl himself off of a changing table.

Considered in the light most favorable to the verdict, this evidence was sufficient to enable the jury to find Jonker guilty of cruelty to children in the first degree. OCGA § 16-5-70 (b) provides: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." "[T]he basic elements of the offense must be shown by evidence . . . establishing the age of the child, that the child suffered physical or mental pain, that the pain was cruel or excessive, that the

6

defendant caused the pain, and that the defendant acted maliciously in so doing."
*Brewton v. State*, 266 Ga. 160, 160 (1) (465 SE2d 668) (1996).

> Furthermore,

> for the purposes of the child cruelty statute, malice implies the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Thus, to act maliciously under the statute is to act with the intent to cause harm or with an awareness that harm may result, not with an intent to harm a person the defendant knows to be a minor.

*Flakes v. State*, 365 Ga. App. 97, 99 (a) (877 SE2d 635) (2022). "Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." *Sims v. State*, 234 Ga. App. 678, 681 (1) (b) (507 SE2d 845) (1998) (citation and punctuation omitted).

Here, there was noticeable bruising to B. J.'s legs, coupled with an acknowledgment from Jonker that he might have squeezed B. J.'s legs too hard while holding him down. In addition, there was testimony undermining Jonker's claim that he was merely trying to prevent B. J. from falling off the changing table. This evidence would support the jury's verdict under the circumstances of this case. Compare

*Brewton*, 266 Ga. at 162 (2) (unsanitary condition of a home, standing alone, is insufficient to prove the element of malice). And, though Jonker contends on appeal that the bruising could have been caused by a hospital cable wrapped around B. J.'s legs to check his pulse, the result does not change. It is not the function of this Court to reweigh evidence on appeal. *Jackson*, 443 U. S. at 319 (III) (B).

2. Jonker also maintains that trial counsel rendered ineffective assistance in a number of ways. Due to its importance in deciding this opinion, however, we focus specifically on the contention that trial counsel provided ineffective assistance by failing to request that the trial court instruct the jury regarding the lesser included offense of reckless conduct. As more fully discussed below, we find that, in this regard, trial counsel performed deficiently and that this deficient performance prejudiced Jonker's defense, thereby entitling him to a new trial.

To prevail on his claim of ineffective assistance, Jonker must prove both that his trial counsel performed in a deficient manner and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). As for deficiency, Jonker "must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances

and in light of prevailing professional norms." *Lofton v. State*, 309 Ga. 349, 360 (6) (846 SE2d 57) (2020). "Decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Thomas v. State*, 311 Ga. 706, 714 (2) (a) (859 SE2d 14) (2021) (citation and punctuation omitted). Jonker must also show that the deficient performance prejudiced his defense – that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694 (III) (B).

A review of the record indicates that, although trial counsel intended to request an instruction on lesser included offenses, including reckless conduct and simple battery, he simply forgot to do so, despite having discussed this strategy with Jonker. To determine whether this failure constituted deficient performance, we first consider whether an instruction regarding reckless conduct would have been warranted. We find that, if properly requested, it would have been.

It is settled that "reckless conduct may be a lesser included offense of cruelty to children, if the harm to the child resulted from criminal negligence rather than malicious or willful conduct." *Shah v. State*, 300 Ga. 14, 19 (2) (793 SE2d 81) (2016)

(citation and punctuation omitted). So, the question then becomes whether there was any "evidence to support a finding of an intermediate level of culpability—that [Jonker] harmed [B. J.] but did so only through criminal negligence." Id. at 20 (2) (a). Criminal negligence has been defined as "reckless and wanton negligence of such a character as to show an utter disregard for the safety of others who might reasonably be expected to be injured thereby." *New v. State*, 260 Ga. 441, 441 (1) (396 SE2d 486) (1990) (citation and punctuation omitted).

The evidence here would support a possible finding of criminal negligence. In his interview with police, Jonker explained that, while B. J. was struggling and twitching, he believed that B. J. might cause himself to fall off the changing table. Jonker then grabbed B. J.'s legs, thinking that doing so was a necessary act to save the child, and, in this excited state, Jonker grabbed B. J.'s legs too forcefully. So, the evidence provides at least some indication that Jonker did not willfully and maliciously harm B. J. Instead, he overreacted based on a belief that B. J. was about to fall off the changing table, and he attempted to save B. J. in a manner in which he negligently applied too much force to prevent the perceived danger.[4] See *Castro-Moran v. State*,

---

[4] And, though a pediatrician opined that a baby could not roll over, there is no indication that Jonker *knew* that fact and grabbed B. J. anyway. Instead, Jonker could

10

356 Ga. App. 248, 253 (1) (b) (845 SE2d 708) (2020) (trial court erred when it failed to charge the jury on reckless conduct, as a lesser included offense of cruelty to children in the first degree, where defendant took her sick child to the health department, followed the directions of a health department nurse by taking the victim to a hospital, but then refused medical treatment for child due to financial concerns); *Landell v. State*, 357 Ga. App. 207, 211-212 (2) (850 SE2d 419) (2020) (defendant's stated sincere – if ultimately misguided – belief that his child did not require medical intervention warranted a charge on involuntary manslaughter based on reckless conduct).

It is also settled that "[a] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." *Seabolt v. Norris*, 298 Ga. 583, 585 (2) (783 SE2d 913) (2016) (citation and punctuation omitted). Therefore, under the circumstances of this case, Jonker would have been entitled to an instruction on reckless conduct had that instruction been properly requested by trial counsel. Trial counsel's non-strategic

---

have believed that B. J. had that ability to harm himself and negligently overreacted to the situation.

failure to make this request, therefore, constitutes deficient performance, and Jonker has satisfied the first prong of the *Strickland* paradigm.

Under the second prong of *Strickland*, Jonker must also show that "there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694 (III) (B). Jonker has done so here. As mentioned, the record indicates that trial counsel intended to include in Jonker's defense at trial that he, at most, was criminally negligent. Indeed, in arguing a motion for directed verdict following the State's presentation of its case, trial counsel asserted this type of reasoning. Moreover, any evidence that Jonker had been abusing B. J., or had any intent to do so, was considerably less than overwhelming. To the contrary, the evidence indicates that Jonker consistently sought out medical care for B. J. and cooperated with healthcare providers at all times. And, based on this evidence, the jury acquitted Jonker of six of the seven counts he was ultimately tried for committing.[5] In addition, although "[t]here [may have been] some tension between the theory that [Jonker] committed no crime and the theory that [he]

---

[5] We also note that Jonker's defense was at least partially affected by Luisa's exercise of her Fifth Amendment right, as trial counsel explained to the trial court that part of his defense was to shift blame to her, as she was the child's primary caretaker and evidence indicated that most of the injuries likely occurred prior to September 6.

acted with criminal negligence, . . . either position was much better for [him] than a finding that [he] acted with malice and willfulness." *Shah*, 300 Ga. at 22 (2) (b). Ultimately, then, trial counsel's deficient performance in failing to properly request an instruction on reckless conduct,

> deprived [Jonker] of the opportunity to [fully pursue] an alternative theory of defense that may have been stronger than those [asserted], and to offer to the jury an opportunity to convict him of a lesser offense without entirely exonerating him from criminal responsibility[.]

*McIver v. State*, 314 Ga. 109, 142 (2) (h) (875 SE2d 810) (2022). See also *Curtis v. State*, 310 Ga. App. 782, 786-787 (2) (714 SE2d 666) (2011) (holding that the failure to give a lesser included jury charge was not harmless when the evidence of the greater charge was not overwhelming); *Hill v. State*, 300 Ga. App. 210, 212–213 (1) (684 SE2d 356) (2009) (reversing convictions where the trial court erred in refusing to instruct the jury on a defense that, although inconsistent with another raised defense, was supported by slight evidence and the evidence of guilt was not overwhelming).[6]

---

[6] Contrary to the State's argument, this is not an "all or nothing" case in which the only potential outcome is either that Jonker committed cruelty to children in the first degree or no crime at all. As discussed above, there is evidence of an intermediate level of culpability. For this reason, the cases cited by the State involving an all-or-nothing scenario are distinguishable and do not control here. See *Bostic v. State*, 284 Ga. 864, 866 (2) (672 SE2d 630) (2009) (evidence showed that either the defendant violently shook the child or the child was injured by someone else); *Banta v. State*, 282

Therefore, for all of the reasons set forth above, we find that trial counsel performed deficiently by failing to request an instruction on reckless conduct as a lesser included defense and that there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. In light of this showing of constitutionally ineffective assistance of counsel, we must reverse Jonker's conviction for cruelty to children in the first degree. See *McIver*, 314 Ga. at 142 (2) (h).

---

Ga. 392, 398 (5) (651 SE2d 21) (2007) (evidence showed either that the defendant severely beat the child and failed to seek care or that help was summoned immediately after the child unexpectedly "keeled over"); *Allen v. State*, 247 Ga. App. 10, 14-15 (3) (543 SE2d 45) (2000) (the evidence showed that either the defendant hit and bit the child or committed no crime at all).

3. Given our ruling in the prior division, we need not consider Jonker's remaining contentions.[7]

*Judgment reversed. Dillard, P. J., and Land, J., concur.*

---

[7] We must caution, however, that the trial court's reasoning for excluding Luisa's testimony due to her invocation of her Fifth Amendment privilege was at least partially based on the limitation period for her potential prosecution for the December 2022 nolle prossed counts (lasting until early June 2023). See OCGA § 17-3-3 (extending the statute of limitation for prosecution an additional six months "from the time the nolle prosequi [is] entered"). That deadline has now passed, and, should the State decide to retry Jonker, the trial court may need to revisit its ruling on the admissibility of Luisa's testimony. See *Prather v. State*, 303 Ga. App. 374, 376 (1) (693 SE2d 546) (2010) ("As a general rule, a post-conviction reversal or grant of a motion for new trial which is not based on insufficiency of the evidence does not preclude retrial.") (citation and punctuation omitted).