## A10A1132. HUMPHRIES v. THE STATE.
### (699 SE2d 62)

MIKELL, Judge.

Willie Humphries was found guilty by a jury of kidnapping with bodily injury, rape, aggravated sodomy, and aggravated assault. Following a hearing, the trial court denied Humphries's motion for new trial. Humphries appeals, challenging the sufficiency of the evidence as to his kidnapping conviction and the admissibility of the detective's testimony as to the victim's injuries. Finding no error, we affirm.

On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the

---

[16] *Vincent v. State,* 210 Ga. App. 6, 7 (2) (435 SE2d 222) (1993).

[17] See *Coleman v. State,* 286 Ga. 291, 301-302 (9) (687 SE2d 427) (2009).

defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the offenses charged beyond a reasonable doubt.[2]

So viewed, the record reflects that on the evening of July 23, 2005, M. C. went jogging with friends in Candler Park. After her friends returned to their house, M. C. walked to the top of an open hill on the golf course near the clubhouse, a lighted area. When she reached the top of the hill, she saw Humphries, who caught up with her, "grabbed both [her] arms," and dragged her down the open, "pretty steep" hillside of the golf course and into a wooded area with a small creek. M. C. testified that it was lighter toward the top of the hill where Humphries first grabbed her, but that "the light didn't really make it" down to the wooded area, which was "pretty dark." Humphries told her to take her pants and shoes off; when she resisted, he became angry and punched her "really hard" in the head. Humphries forced her to engage in oral sodomy; then he raped her. Thereafter he choked her repeatedly, so that eventually she blacked out. When she regained consciousness, Humphries still had her in a choke hold. She reached up and punched the side of his head, which so enraged him that he slammed her to the ground, breaking her collarbone.

While she lay on the ground, Humphries stepped away, and M. C. got to her feet and attempted to escape by running up the hill, but she did not get far before Humphries tackled her and started hitting her again. At this point, M. C., in fear for her life, ceased to resist. Humphries forced her to walk back down the hill into the woods to a small shelter, where he raped her three more times. Eventually, Humphries mentioned "letting her go" but expressed concern that her friends would know she was injured. M. C. told him that she would say nothing about her injuries and her friends would never notice. Reassured, Humphries gave her a towel to wrap around her waist in place of her pants, which were lost, and he walked her through the park to a street at the opposite side.

M. C.'s friends, worried about her failure to return, were driving around, looking for her. One friend testified that when they finally caught sight of her, she had no pants on; a dirty towel was wrapped around her waist; her white shirt was brown with soil; her hair was matted; she had bruises and cuts all over her face, neck, and shoulders; and her collarbone was protruding out. Humphries allowed M. C. to get into the car with her friends.

---

[1] *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

[2] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

M. C. immediately told her friends to drive away, that she had been attacked. Her friends called the police, and M. C. was taken to the hospital. A subsequent "rape kit" examination revealed that vaginal swabs collected from the victim contained DNA that matched Humphries "or his identical twin." The examining doctor testified to bruises on M. C.'s face, neck, shins, and back, as well as to the fracture of her left clavicle.

1. The evidence adduced at trial and summarized above was sufficient to authorize the jury to find Humphries guilty beyond a reasonable doubt of rape, aggravated sodomy, and aggravated assault, under the standard set forth in *Jackson v. Virginia*.[3] Indeed, Humphries concedes as much in his brief. Humphries contends, however, that the evidence was not sufficient to support his conviction for kidnapping, arguing that the state failed to establish the essential element of asportation. This contention is without merit.

At the time of Humphries's trial, OCGA § 16-5-40 (a) provided that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." In order to determine whether the movement of the victim constituted sufficient asportation under the kidnapping statute, we apply the test set forth in *Garza v. State*.[4] This test calls for the assessment of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[5]

This test allows the court to determine "whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue";[6] or whether, on the other hand, the movement is "merely a criminologically insig-

---

[3] Supra.

[4] 284 Ga. 696 (670 SE2d 73) (2008). An amendment to the kidnapping statute, applicable to crimes committed on or after July 1, 2009, does not apply to the events at issue here, which took place in July 2005. Thus, the standard set forth in *Garza* applies in the instant case. See *Payne v. State*, 301 Ga. App. 515, 518 (1), n. 1 (687 SE2d 851) (2009); *Horne v. State*, 298 Ga. App. 601, 603 (1), n. 1 (680 SE2d 616) (2009).

[5] (Citation omitted.) *Garza*, supra at 702 (1).

[6] (Citation omitted.) Id.

YALE LAW LIBRARY

nificant circumstance attendant to some other crime.''[7]

In the case before us, the evidence showed that the victim was dragged down the entire length of a steep hill, from a place with some light to a darker place. Later, when she attempted to escape her attacker, she was again forced down the hill. We cannot view this movement as "minimal." Even though the record does not specify the duration of this movement, the record shows that this movement was not an inherent part of the other, separate crimes — rape, aggravated sodomy, and aggravated assault.[8] Further, the movement that occurred here presented a significant danger to the victim independent of the danger posed by the other offenses, by further enhancing her attacker's control over her.[9] By dragging the victim down the hill, away from a more lighted place to a darker and more isolated place, Humphries reduced the possibility of her obtaining help from others[10] or of her making an escape. In fact, her subsequent effort to flee up the hill was unavailing. Examined in light of the factors set forth in *Garza*, the evidence in this case was amply sufficient to establish the asportation element of the offense of kidnapping. We conclude that the evidence was sufficient for a rational trier of fact to have found the essential elements of the crime of kidnapping beyond a reasonable doubt.[11]

2. Humphries contends that the trial court erred in allowing the officer investigating the alleged assault to testify that M. C.'s appearance was consistent with her story. This argument is without merit.

Detective Lisa Roey, of the City of Atlanta Police Department, identified several photographs of M. C. taken at the hospital on the morning of July 24, 2005. Roey further testified as to her observations concerning M. C.'s condition at that time. Roey stated that although no photograph had been taken of the back of M. C.'s head, Roey recalled that the back of M. C.'s hair was "all knotted up like . . . a rat's nest" and that her hair had grass and dirt in it. Roey further testified that she could feel knots on the back of M. C.'s head, "huge knots about the size of an egg." Roey described the dirt on

---

[7] (Citation and punctuation omitted.) Id.

[8] See *Dixon v. State*, 300 Ga. App. 183, 184-185 (1) (684 SE2d 679) (2009) (even though record did not specify duration of movement, asportation sufficiently shown where defendant dragged captive employee from inside restaurant to adjacent parking lot; movement was not inherent part of robbery; and movement served to isolate victim).

[9] See *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (gunman isolated victims and enhanced his control over them by forcing them from one room to another within duplex), citing *Garza*, supra.

[10] See *Dixon*, supra at 185 (1). Accord *Flores v. State*, 298 Ga. App. 574, 577 (1) (680 SE2d 609) (2009) (whole court).

[11] See *Jackson*, supra.

M. C., even under her fingernails. Roey also testified that M. C. smelled "pretty bad. The whole room . . . stunk [sic] like urine."

When the prosecutor asked if M. C.'s appearance was consistent with her report of what had happened, counsel for Humphries objected, on the ground that the question went to the ultimate issue. Without ruling on the objection, the trial court asked state's counsel to "[j]ust ask what [Roey] saw, whether it was consistent." State's counsel then asked Roey, "Did you believe it was consistent with what she told you?" Without further objection from Humphries's counsel, the witness responded to the re-phrased question.

Roey's testimony did not address the ultimate issue in the case and therefore the trial court did not err in admitting it. Roey was not asked if Humphries was guilty of the assault on M. C.; she was asked to describe the physical evidence she observed when she met M. C. at the hospital.[12] She was then asked if M. C.'s injuries and condition were consistent with the story M. C. gave. Testimony that the victim's injuries were consistent with the allegations of assault has been held to be admissible and does not invade the province of the jury; "the fact that such testimony may also indirectly, though necessarily, involve the [victim's] credibility does not render it inadmissible."[13]

Relying on *Grimes v. State*,[14] Humphries argues that because photographs of M. C. were admitted into evidence, the state was foreclosed from eliciting testimony from the investigating officer as to what the officer herself observed. Humphries's reliance on *Grimes* is misplaced. In that case, we concluded that the defendant's counsel rendered ineffective assistance when he failed to object to witness testimony identifying the defendant as the man seen in photographs derived from bank security videotapes,[15] because it is "improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions."[16] In the case at bar, Roey's testi-

---

[12] See *Brown v. State*, 275 Ga. App. 99, 105 (4) (a) (619 SE2d 789) (2005) (victim's testimony that defendant stabbed him on purpose was not inadmissible as invading the province of the jury, where testimony was based on defendant's physical behavior observed by victim); *Ramos v. State*, 252 Ga. App. 106, 107 (1) (555 SE2d 779) (2001) (witness's testimony that defendant crossed over lane lines did not usurp jury's duty to decide ultimate issue of whether defendant was guilty of failure to maintain lane).

[13] (Punctuation and footnote omitted.) *Odom v. State*, 243 Ga. App. 227-228 (1) (531 SE2d 207) (2000) (expert testimony that "victim's physical examination showed injury consistent with sexual abuse" was admissible).

[14] 291 Ga. App. 585 (662 SE2d 346) (2008).

[15] Id. at 589 (2).

[16] (Punctuation and footnote omitted.) Id. at 590 (2).

YALE LAW LIBRARY

mony does not deal with the identity of M. C.'s attacker, but with the physical evidence of M. C.'s condition observed by Roey herself, which is indeed admissible.[17] We conclude that the trial court did not err in admitting the challenged testimony.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

## DECIDED JULY 8, 2010.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[17] See *Roberts v. State*, 272 Ga. 822, 826 (6) (537 SE2d 86) (2000) (officer's testimony admissible where he related what he observed by use of his senses of sight and hearing).