In the Supreme Court of Georgia

Decided: October 6, 2014

S14A0691. LEVIN v. MORALES, Warden.

BENHAM, Justice.

In 1993, appellant Gregory A. Levin broke into the home of his ex-wife and held her hostage for 12 hours. In 1994, in regard to that incident, appellant was convicted of kidnapping with bodily injury, aggravated assault, burglary, two counts of simple assault (lesser included of cruelty to children and aggravated assault), aggravated battery, possession of a firearm during a crime, and making harassing phone calls. He was sentenced to life in prison for kidnapping and a consecutive term of 48 years for his other crimes, except for the aggravated battery conviction which was merged into the kidnapping conviction. His convictions were affirmed in part and reversed and remanded in part by the Court of Appeals in Levin v. State, 222 Ga. App. 123 (473 SE2d 582) (1996).[1] In 2012, appellant petitioned for habeas relief alleging that the

_____

[1] The Court of Appeals reversed the convictions for one aggravated assault, possession of a firearm, and making harassing phone calls. Id. at 126-127. The record before this Court does not

State failed to prove asportation as per this Court's decision in Garza v. State, 284 Ga. 696 (670 SE2d 73) (2008). The habeas court concluded the asportation requirement was met under Garza. We granted review of the habeas court's denial of relief, posing the following question: "Did the habeas Court err when it held that the evidence of asportation was sufficient to support the appellant's conviction for kidnapping with bodily injury? See Garza v. State, 284 Ga. 696 (670 SE2d 73) (2008)." Because we answer the question in affirmative, the judgment of the habeas court is reversed and the case is remanded with direction.

The record shows that the victim was asleep in her bedroom when her 12-year-old daughter heard appellant banging on the back door of their small duplex apartment. The daughter ran into the bedroom, woke her mother, and closed and locked the bedroom door. Determining that they could not leave the bedroom because the windows were painted shut, the victim called police. While the victim was on the phone with authorities, appellant entered the house and proceeded to punch through the bedroom door so he could unlock it. The daughter testified that when appellant entered the bedroom he had a hammer and

reflect what, if anything, happened to the case on remand.

2

a gun in his hands. The victim was able to tell police about the gun before appellant snatched the phone away from her and hung it up. When the phone rang immediately after having been placed on its cradle, appellant destroyed it. Appellant told the daughter to leave the house and she did so. As she ran out of the house police were arriving on the scene. After the daughter left and while still in the victim's bedroom, appellant held the gun to the victim's head, made threats, and slapped her. He also hit the victim on the back with an unattached bureau mirror, pistol whipped her, and kicked her in the stomach. Then he started destroying the bedroom furniture. At some point, the police used a public address system, instructing appellant to call them so they could negotiate the victim's release. Having destroyed the phone in the bedroom, appellant dragged the victim by the neck and at gun point to the living room in order to retrieve a working telephone. Upon retrieving the telephone, he took the victim back to the bedroom. At that point, he also barricaded the front and back doors of the apartment.

Appellant held the victim hostage for a approximately 12 hours. During that time, appellant and the victim mostly stayed in the victim's bedroom, but did move to various other places in the small apartment, including moving to the

3

back door to retrieve cigarettes and a hostage telephone from the police,[2] moving to the kitchen where the victim fixed a meal for appellant, and moving to the bathroom. The victim testified she was with appellant throughout the entire ordeal and that any movement was at gunpoint. Appellant would not talk to the authorities, but forced the victim to speak with police and instructed her on what to say. The incident ended when a SWAT team forced their way into the apartment and apprehended appellant.

> To determine whether the asportation requirement has been met, Garza requires the following four factors to be considered: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

(Citation omitted). Upton v. Hardeman, 291 Ga. 720 (732 SE2d 425) (2012). Generally, all factors of the Garza test need not be met to establish asportation. Wilkerson v. Hart, 294 Ga. 605 (3) (755 SE2d 192) (2014). The purpose of the Garza test is to determine whether the movement in question is in the nature of

---

[2] The police had the regular phone service to the house disconnected such that the phone appellant retrieved from the living room could no longer be used. The authorities provided the hostage telephone which had a dedicated line to the police and which was equipped with a listening device so that police could hear what was going on inside the house.

the evil which the kidnapping statute was originally intended to address–namely, whether the movement served to substantially isolate the victim from protection or rescue. 284 Ga. at 702. In this case, the habeas court concluded the asportation requirement was met under Garza inasmuch as the movement of the victim from areas inside her home to the master bedroom was unnecessary to complete any of the crimes charged and served only to isolate and leverage control over the victim so that she could not escape:

> The aggravated assault was completed when [appellant] pointed the gun at the victim, the burglary was completed when [appellant] entered the house, and the aggravated battery was completed when [appellant] struck the victim with the mirror and the gun and kicked her. The movement of the victim into the master bedroom served to conceal the victim, diminish her opportunity to be rescued, and to increase [appellant's] control over her.
>
> ...Because the movement of the victim in this case, although of minimal duration, was not an inherent part of a separate offense and created an additional danger to the victim, [appellant's] conviction for kidnapping with bodily injury satisfies the Garza standard.

We disagree with the habeas court's conclusion.

As an initial matter, it is undisputed that the movement in this case was of a short duration. Pretermitting whether the second and third prongs of the test were satisfied with regard to the crimes charged, the movement in this case

5

was not in the nature of the evil the kidnapping statute was designed to protect against as per prong four of the test. Specifically, appellant's movement of the victim did not allow him to exercise more control over her, did not place her in more danger, and did not isolate her from protection or rescue. Appellant encountered the victim in her bedroom, and moving her back and forth to that room would not have put her in any more danger than she had been from the very beginning of the incident. See Wilkerson, supra, 294 Ga. at 609; Garza, supra, at 704. See also Sellers v. State, 325 Ga. App. 837 (2) (755 SE2d 232) (2014) (movement of the victim from one bedroom to another did not further isolate her from the danger she was already in). Also, because the police were at the scene within minutes and were fully aware of the victim's circumstances, there was no evidence that the movement concealed the victim from being rescued. See Garza, supra, 284 Ga. at 704 (no evidence that movement served to conceal the victim from police, particularly where police were already aware that the victim was being detained). Thus, based on the facts of this case, there was insufficient evidence of asportation per Garza.[3]

---

[3]Having reached this conclusion, appellant's allegation concerning the constitutionality of the pre-Garza kidnapping statute is moot.

6

Appellant's conviction for kidnapping with bodily injury must be reversed and the life sentence vacated.  We note further that in the original sentencing order, the aggravated battery conviction was merged into the kidnapping conviction.  Now that the kidnapping conviction has been reversed, on remand the trial court will need to revisit sentencing appellant on the conviction for aggravated battery.

Judgment reversed and case remanded with direction.  All the Justices concur.

S14A0691. LEVIN v. MORALES, Warden.

BLACKWELL, Justice, concurring.

I concur fully in the opinion of the Court, and I write separately only to note some uncertainty in our law about the extent to which Gregory A. Levin and others like him may be retried, their convictions having been set aside on habeas or appeal. When a conviction is set aside for a mere trial error — inaccurate jury instructions, for instance, or the admission of inadmissible evidence — the State generally is permitted a retrial, and the constitutional prohibition of double jeopardy does not preclude it. See State v. Caffee, 291 Ga. 31, 34 (3) (728 SE2d 171) (2012). When a conviction is set aside, however, upon the failure of the State to have adduced evidence legally sufficient to sustain the conviction, the constitutional prohibition of double jeopardy ordinarily bars a retrial. See Burks v. United States, 437 U. S. 1 (98 SCt 2141, 57 LE2d 1) (1978). See also Green v. State, 291 Ga. 287, 288 (1) (728 SE2d 668) (2012); Prater v. State, 273 Ga. 477, 481 (4) (545 SE2d 864) (2001). Today, we hold that the State failed to present evidence legally sufficient to sustain the conviction of Levin for kidnapping, and on that basis, we direct that

his conviction must be set aside. If this were an ordinary sufficiency case, our decision would preclude a retrial. But it might not be so ordinary.

From time to time, the appellate courts may perceive that the judicial understanding of a principle of law has gone off course, and they may undertake a course correction, upending an understanding of the law that previously had been settled in the minds of judges, lawyers, and ordinary citizens alike. Most often, these course corrections concern points of procedural law. But on occasion, the appellate courts may correct course as to substantive law, including the elements of a crime. Recently, this Court did just that in Scott v. State, 295 Ga. 39 (757 SE2d 106) (2014), deciding that the longstanding judicial understanding of the elements of trafficking in cocaine under former OCGA § 16-13-31 (a) (1) was in error, and holding that proof of trafficking under that version of the statute required "proof that the defendant had knowledge of the weight of the cocaine," 295 Ga. at 42 (3), several precedents of the Court of Appeals to the contrary notwithstanding. Id. at 42, n. 4 (3) (overruling Cleveland v. State, 218 Ga. App. 661 (463 SE2d 36) (1995), and its progeny).

Another such course correction was Garza v. State, 284 Ga. 696 (670 SE2d 73) (2008), the case on which we rely today. Before Garza, it seemed

settled in Georgia that virtually any movement at all of the victim would suffice as asportation for the purposes of former OCGA § 16-5-40. See, e.g., Peterson v. State, 212 Ga. App. 31, 33-34 (441 SE2d 267) (1994) (Blackburn, J., concurring specially) ("Under the present holdings, almost any crime in which a victim moves from the point of initial contact with the defendant would authorize a kidnapping charge."); Helton v. State, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983) ("[O]nly the slightest movement of the victim is required to constitute the necessary element of asportation.") (citation omitted); Chambley v. State, 163 Ga. App. 502, 504 (1) (295 SE2d 166) (1982) ("[A]ny unlawful asportation, however slight, is sufficient to support a kidnapping conviction.") (citations omitted). But in Garza, this Court said that this judicial understanding of asportation had gone too far off course, and we held that asportation required movement that was more meaningful and consequential, identifying the four factors to which the Court looks today. 284 Ga. at 702 (1). When the State tried Levin for kidnapping — fourteen years before our decision in Garza — the prosecuting attorneys, of course, had no reason to think that anything more than proof of a slight movement would be necessary to prove asportation. Nonetheless, under Garza, the State failed to present evidence

3

sufficient to sustain the conviction in this case, and Levin is entitled to have his conviction for kidnapping set aside.

When the State can know what proof the law requires, but fails to offer such proof at trial, the State ought not have another chance to convict the accused. But when the State relies on a longstanding and settled understanding of the law, and it offers evidence sufficient to carry its burden consistent with that understanding — only to have that understanding suddenly upended years later by an appellate court undertaking a course correction — it is not so clear that the State should be denied a second chance. Courts in a number of other jurisdictions have held that, "where a reviewing court determines that the evidence presented at trial has been rendered insufficient only by a post-trial change in law, double jeopardy concerns do not preclude the government from retrying the defendant." United States v. Ford, 703 F3d 708, 711 (II) (A) (4th Cir. 2013) (citations omitted). See also United States v. Wacker, 72 F3d 1453, 1465 (II) (A) (10th Cir. 1996); United States v. Weems, 49 F3d 528, 531 (II) (9th Cir. 1995); State v. Liberty, 370 SW3d 537, 554 (IV) (Mo. 2012); State v. Drupals, 49 A3d 962, 976 n.12 (Conn. 2012). I can find no precedent in

4

Georgia, however, that speaks to this question, and for us, the answer for now is uncertain.

Today is no occasion to attempt to resolve the question, and I mean to express no definitive view of the right answer. This appeal from a denial of habeas relief does not squarely present the question, and in fact, Levin himself may never have to confront it. After all, perhaps the prosecuting attorneys in his case would have nothing more to offer about asportation in any event, and so, they would not prefer to retry him, even if they could. Even so, I anticipate — especially in light of Garza and Scott — that some Georgia court soon may have to confront the question, whether for Levin or another similarly situated. I write separately only to note that the question appears under Georgia law to be an open one.