**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 30, 2019**

# In the Court of Appeals of Georgia

A19A0774. WALKER v. THE STATE.

BROWN, Judge.

Maurice Walker appeals from his convictions of armed robbery, kidnapping, and possession of a firearm during the commission of a crime,[1] contending that insufficient evidence supports each of his convictions. For the reasons explained below, we reverse Walker's kidnapping conviction and affirm his remaining convictions.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

---

[1] The trial court sentenced Walker to life for armed robbery, 20 years concurrent for kidnapping, and 5 years probation consecutive to the armed robbery sentence for possession of a firearm during the commission of a crime.

is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that after the victim parallel parked his car, he noticed two men, approximately 100 feet away, walking in the center of the street toward him as he started to get out of his car. The victim thought it was odd and "just kind of scurried myself up, [and] headed between cars to walk on the lawn side." The victim testified that as the men

> got closer they kind of drifted in my direction a little bit as I was coming between the two cars to get on the other side. . . . One of them asked if I had a cigarette or a smoke, and then right when I was motioning that I didn't have anything, . . . the other individual came up behind me with a pistol – or behind me, the first one, and had a pistol and pulled down either a hat with holes in it or a ski mask.

At another point in his testimony, the victim clarified that the man with the gun was behind the one who asked for a cigarette and turned away from him briefly and pulled

down the mask before turning back around with the pistol pointed at him. Both men demanded that he give them his money.

When the victim told the men that his money was in his car, they ordered him to hurry and get it. After he moved a few feet and stepped back onto the street, he gave the gunman cash from a wallet in his back pocket. Right after that, the first man grabbed the victim's arm and told the gunman to "cap him, man; he saw me; cap him." The victim testified that as he jumped away, "[the first man]'s grip went to [his] shirt and [the first man] started pulling me back and so I was struggling with that, and [the gunman] was trying to keep up with how we were moving, and then finally I broke free after [the first man] pulled me a couple of feet back towards the trees" and "the shadows again." The victim testified that the entire encounter "couldn't have been more than 30 seconds."

In his trial testimony, the victim described the first man who had asked for the cigarette as a black man with "dread-locks" and "smaller built than the gunman," wearing a designer camouflage jacket, dark boots, and a ski cap. This man was later identified as Mason Johnson. He described the gunman as being taller, heavier built,

3

and wearing light-colored athletic shoes,[2] jeans and "a dark – it looked like a coverall or a sweater or some kind of over-jacket that was zipped up or buttoned up and had a ski mask on. Could've been a hat with holes in it, or a ski mask." The gunman was later identified as Walker. The victim testified that he saw both of the men's faces before Walker put the mask on and that there were "bright street lamps" all along the street where he parked. While the street was illuminated well, the residences were "kind of darkish and in shadow."

After the victim's escape, he called 911. Approximately 15 minutes later, the victim saw the two men walking down the sidewalk on the other side of the street as he was talking to a police officer about the robbery. The victim testified that he

> actually was in disbelief that they came back to where I was, so I just wanted to make sure that they were who I thought they were, so I took a minute – after I told the deputy that I thought these were the guys that just robbed me, he said, are you sure. I said, well, let me make sure. As they were walking up the street they actually came closer to where I was. They were still on the sidewalk. Almost to where they were across the street from me I identified – positively identified them without a doubt.

---

[2] An investigating officer who took a recorded statement from the victim testified that the victim told him that it was Johnson who was wearing light-colored shoes.

4

The officer then got into his patrol car and detained the two men with the assistance of other patrol officers. The victim then identified both men again. At the time the victim identified Walker to the police, Walker was no longer wearing the "outer garment that was worn during the robbery and the knit cap or ski mask." When they were arrested, Johnson was wearing a camouflage jacket, black boots, a white shirt, and dark-colored blue jeans, and Walker was wearing a pair of white and black tennis shoes, dark blue jeans, a gray shirt, and a black hat.

1. Walker contends that insufficient evidence supports the asportation element of his kidnapping conviction under the standard created by the Supreme Court of Georgia in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008).[3]

> *Garza* requires courts to consider four factors to determine whether the movement of an alleged kidnapping victim is sufficient to establish the essential element of asportation: the duration of the movement; whether the movement occurred during the commission of a separate offense; whether such movement was an inherent part of that separate offense; and whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

[3] As the incident at issue took place on January 3, 2009, we must apply the standard for asportation enunciated by the Supreme Court of Georgia in *Garza*, supra. The Legislature's subsequent amendment to the kidnapping statute did not become effective until July 1, 2009. See *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d 124) (2011).

(Citation and punctuation omitted.) *Chambers v. Hall*, Ga. (2) (Case No. S18A1322, decided March 4, 2019). The purpose of the *Garza* test is to "determin[e] whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address – i. e., movement served to substantially isolate the victim from protection or rescue – or merely a criminologically insignificant circumstance attendant to some other crime." (Citation and punctuation omitted.) *Garza*, 284 Ga. at 702 (1).

In this case, as in *Chambers*, supra, the victim's "movement was minimal in duration and distance – it happened quickly and was limited to a few feet." *Chambers*, Ga. at (2). While the victim may have been dragged a couple of feet toward a darker area of a public place, that scant distance did not place the victim in more danger than he was already in or isolate him from protection or rescue. See *Levin v. Morales*, 295 Ga. 781, 783 (764 SE2d 145) (2014); *Wilkerson v. Hart*, 294 Ga. 605, 609 (3) (755 SE2d 192) (2014). Even though the movement here took place after the armed robbery was complete and was arguably not an inherent part of that offense, satisfaction of some factors of the *Garza* test does not mandate a finding that the State presented sufficient evidence of asportation. In *Levin*, supra, the Supreme Court of Georgia found insufficient evidence of asportation even though it assumed

6

that the State had satisfied factor two (movement did not occur during the commission of a separate offense) and three (was not an inherent part of that separate offense) of the *Garza* test. *Levin*, 295 Ga. at 783. Based upon the short distance the victim was moved in a public street, we conclude that the State failed to present evidence of asportation sufficient to support Walker's kidnapping conviction. *Chambers*, Ga. (2). Compare *Humphries v. State*, 305 Ga. App. 69, 71-72 (1) (699 SE2d 62) (2010) (sufficient evidence of asportation under *Garza* test where victim pulled from top of open hill on golf course near lighted area and dragged down steep hill into darker wooded area).

2. Walker contends that insufficient evidence supports his convictions for armed robbery and possession of a firearm during the commission of a crime based upon the victim's limited opportunity to view Walker during the crime and an inconsistency in the victim's statement about the shoes worn by Walker and Johnson. Any inconsistencies in the victim's testimony and the reliability of his identification are for the jury to consider and weigh. See *Graham v. State*, 337 Ga. App. 193, 195-196 (1) (786 SE2d 857) (2016). "Because [Walker]'s arguments go to the weight, rather than to the sufficiency of the evidence, he presents no basis for reversing [these

7

convictions.]" (Citation and punctuation omitted.) *Tiller v. State*, 314 Ga. App. 472, 474 (1) (724 SE2d 397) (2012).

*Judgment affirmed in part and reversed in part. Mercier, J., concurs. Barnes, P.J., concurs in part and dissents in part.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY, COURT OF APPEALS RULE 33.2(a).**

A19A0774.  WALKER v. THE STATE.

BARNES, Presiding Judge, concurring in part and dissenting in part.

Because there was sufficient evidence to support the asportation element of kidnapping under the test enunciated in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), I would affirm the kidnapping conviction.  Accordingly, I respectfully dissent in part from the majority opinion.[1]

In the present case, the forced movement of the victim occurred after the armed robbery was complete and was not an inherent part of that offense.  The majority,

---

[1] I concur with the majority opinion to the extent that the majority affirms Walker's convictions for armed robbery and possession of a firearm during the commission of a crime.

2

however, concludes that the *Garza* test for asportation was not satisfied because the victim's movement was minimal in duration and distance and the "scant distance did not place the victim in more danger." While I agree that the movement of the victim was minimal, I disagree with the majority's conclusion that the victim was not placed in more danger. The victim testified that after he gave his wallet to the robbers at gunpoint, one robber told the other robber that the victim should be shot because he had seen the robber's unmasked face, leading to a physical struggle between the victim and robbers. Significantly, according to the victim, the robbers "were pushing me back in the shadows underneath one of the trees out of the light of the street lamp." This testimony by the victim, when construed in the light most favorable to the prosecution, reflected that after the armed robbery, the robbers moved the victim away from a visible area near a street lamp to a dark area underneath a tree where they planned to shoot him.

The jury was authorized to find that moving the victim from a lighted area to a dark area under a tree at night after the armed robbery was complete lessened the perpetrators' risk of detection and was intended "to isolate the victim from protection or rescue, thus increasing the danger faced by the victim." *Flores v. State*, 298 Ga. App. 574, 576 (1) (680 SE2d 609) (2009) (although duration of the movement was

3

short, the "forced removal of the victim from a visible area to the secluded dark area" was sufficient to show asportation under *Garza* because it presented "a significant danger to the victim independent of the [underlying crime]"). See *Humphries v. State*, 305 Ga. App. 69, 72 (1) (699 SE2d 62) (2010) (evidence was sufficient to show asportation pursuant to *Garza*; although record did not specify the duration of the movement, the forced movement of the victim "away from a more lighted place to a darker and more isolated place" increased the danger to the victim and was not an inherent part of the other, separate offenses). Accordingly, although the duration of the movement was minimal, the other three *Garza* factors were satisfied, including the "significant danger" factor, and thus the evidence was sufficient to establish asportation under the *Garza* test. See *Inman v. State*, 294 Ga. 650, 651 (1) (b) (755 SE2d 752) (2014) (evidence was sufficient to support conviction under *Garza*, where the movement was not extensive in distance or duration, but other three *Garza* factors were satisfied). See also *Smith v. State*, 312 Ga. App. 174, 180 (5) (718 SE2d 43) (2011) (concluding that asportation had been shown under *Garza* even though the duration of the victim's movement was short).

While the majority relies on the recent Supreme Court case of *Chambers v. Hall*, 305 Ga. 363, 365 (2) (825 SE2d 162) (2019), that case is distinguishable

4

because the victim's forced movement "occurred during and was an integral part of the armed robbery," unlike in the present case, where the movement occurred after the armed robbery was completed. *Wilkerson v. Hart*, 294 Ga. 605, 609 (3) (755 SE2d 192) (2014) is distinguishable for the same reason because in that case the movement "occurred during the commission of the separate crimes." Additionally, *Levin v. Morales*, 295 Ga. 781, 783 (764 SE2d 145) (2014) is distinguishable because the victim in that case was moved back and forth to a bedroom, not from a lighted area to a dark area where the victim would be less visible, as occurred here.

For these reasons, the evidence was sufficient to show asportation under the *Garza* test. This Court therefore should affirm the kidnapping conviction.