**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 15, 2023**

# In the Court of Appeals of Georgia

A23A0855. THE STATE v. PEPPERS.

DILLARD, Presiding Judge.

Following trial, a jury convicted Jill Peppers of second-degree murder, second-degree cruelty to children, and involuntary manslaughter.[1] Peppers filed a motion for a new trial, and the trial court granted it as to each of these convictions because it found there was insufficient evidence to support the jury's verdict. The State now appeals, arguing (1) the trial court's grant of a new trial based on its finding that there was insufficient evidence to support Peppers's convictions was erroneous as a matter of law; (2) this Court is permitted to review the trial court's determination regarding the sufficiency of the evidence; (3) there was no fatal variance between the

---

[1] Peppers was also convicted of possession of methamphetamine, but that conviction is not at issue in this appeal.

allegations in the indictment and evidence presented at trial; and (4) there was sufficient evidence to support Peppers's convictions. For the following reasons, we vacate the trial court's grant of a new trial and remand the case for further proceedings consistent with this opinion.[2]

Viewed in the light most favorable to the jury's verdict,[3] the record shows that on April 8, 2020, an investigator with the Georgia Division of Family and Children Services ("DFCS") had a video conference with Peppers—who was in the hospital after giving birth to a baby boy—to educate her on safe sleep practices for infants.[4] The investigator advised Peppers to notify him when she was discharged from the hospital so they could complete a virtual home visit at her sister's residence, where Peppers had been instructed to go after being discharged. Following this safety training, Peppers signed an acknowledgment form, which, among other things, noted: "Sleeping with my baby increases the risk of my baby dying from suffocation, SUIDS [sudden unexplained infant death syndrome], or SIDS [sudden infant death

---

[2] Peppers filed a motion to dismiss this appeal, which is denied.

[3] *See, e.g.*, *Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

[4] Although it is undisputed that Peppers was under DFCS supervision at the time her baby was born, it is unclear from the record how this came to be.

syndrome]. My baby should be placed on his or her back when sleeping." The DFCS investigator contacted Peppers again on May 4, 2020, when she was staying in a hotel with the baby and another child, at which point they had another video conference to "rediscuss safe sleep," and the investigator observed Peppers was following the safety plan at that time. Specifically, Peppers obtained a bassinet and was placing the baby on his back with no soft objects in the sleep area.

On May 29, 2020, William Davis—a patrol officer with the Elbert County Sheriff's Office—responded to a 911 call regarding an unresponsive child. When Davis arrived, an emergency medical technician ("EMT") was already on the scene, and Davis observed "a young child laying on the bed with blood coming from his nose and blood on the pillows . . . ." According to the EMT, when she arrived, it was immediately obvious that a six-month-old baby was deceased, and so she had no opportunity to resuscitate him. The EMT spoke with Peppers, who could not provide a specific answer regarding what time the baby went to sleep; but Peppers did say the baby fell asleep cradled in her left arm.

As for Davis, he learned that Peppers was the baby's mother and asked her to step outside to speak with him. Peppers told Davis the baby had gone to sleep, and when she woke up, he was unresponsive and cold to the touch.

3

Subsequently, Peppers was charged, via indictment, with second-degree murder, second-degree cruelty to children, and involuntary manslaughter. And following trial, a jury convicted her of those offenses. Peppers then filed a motion for a new trial, which the trial court granted, finding there was insufficient evidence to show Peppers's act of co-sleeping with her son caused his death. This appeal by the State follows.

1. The State argues the trial court's grant of Peppers's motion for a new trial was erroneous as a matter of law. We agree.

After the jury found Peppers guilty of all charged offenses, the trial court granted her a new trial. In doing so, the court appeared to rely solely on the testimony of Doctor Lora Darrisaw, who is the director of pediatric forensic pathology and deputy chief medical examiner for the Georgia Bureau of Investigation.[5] On May 30, 2020, Darrisaw performed an autopsy on Peppers's baby to determine the cause and manner of his death, and she ultimately concluded that he died of SUIDS, which is associated with bed-sharing. Although Darrisaw was clear that SUIDS is related to

_____

[5] Although we glean the facts related to Darrisaw's testimony from the trial court's order as context for its decision, we express no opinion as to whether those facts are accurate or the evidence was sufficient to support Peppers's convictions. Those matters are not before us and are irrelevant to the resolution of this appeal.

co-sleeping, she could not say "within a reasonable degree of medical or scientific probability" that co-sleeping was the cause of the baby's death. Further, Darrisaw could not state the baby would not have died if the co-sleeping had not occurred.

The trial court also found it noteworthy that the State tried to prove Peppers smothered her baby because of a streak of blood on her shirt, but Darrisaw testified that it was not uncommon for a baby's blood to "purge" from the nose upon death from SUIDS. Further, the court determined that evidence of smothering would be a fatal variance from the allegations in the indictment because the counts at issue only alleged Peppers co-slept with her child, not that she smothered him. And as a result, the court did not let the State argue the blood was evidence of smothering. Lastly, the court noted that "[s]ubsumed within the [c]ourt's finding and conclusion is the finding that the jury's verdict is contrary to the evidence and the principles of justice and equity."

As previously noted, the State maintains the trial court's grant of a new trial was erroneous as a matter of law. In fact, both the State *and* Peppers correctly argue that the grant of a new trial based on insufficiency of the evidence violates Peppers's

5

constitutional right against double jeopardy.[6] Indeed, once a reviewing court reverses a conviction solely for insufficiency of the evidence to sustain the jury's verdict of guilty, "double jeopardy bars retrial."[7] And because the trial court improperly granted the motion for a new trial on sufficiency grounds, we must vacate the trial court's order granting Peppers a new trial and remand the case for further proceedings.[8]

---

[6] *See* GA. CONST. art. I, § 1, ¶ XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial."); U.S. CONST. Amend. V ("No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb.").

[7] *Jefferson v. State*, 310 Ga. 725, 726 (854 SE2d 528) (2021); *accord Green v. State*, 291 Ga. 287, 288 (1) (728 SE2d 668) (2012); *Hall v. State*, 244 Ga. 86, 93 (5) (259 SE2d 41) (1979). *Cf. Prather v. State*, 303 Ga. App. 374, 376 (1) (693 SE2d 546) (2010) ("As a general rule, a post-conviction reversal or grant of a motion for new trial which is *not* based on insufficiency of the evidence does not preclude retrial." (punctuation omitted) (emphasis supplied)).

[8] In addition to granting a new trial based on insufficient evidence, the trial court also found that the jury's verdict was contrary to the evidence and the principles of justice and equity. In this regard, it is only where the evidence "demands a verdict of not guilty that it is error for the trial court to refuse to grant a motion for a directed verdict of acquittal." *Roberts v. State*, 158 Ga. App. 309, 310 (3) (279 SE2d 753) (1981) (punctuation omitted); *Rolland v. State*, 235 Ga. 808, 811 (221 SE2d 582) (1976) (same). And here, the trial failed to elaborate or explain its reasoning for this finding. As a result, we need not decide whether a directed verdict of acquittal is demanded on this basis and leave that to be determined by the trial court on remand.

2. Given our holding in Division 1, we need not address the State's remaining arguments.[9]

In sum, the trial court erred in granting Peppers's motion for new trial based on its finding that there was insufficient evidence to support her convictions. Suffice it to say, if the court was concerned about the sufficiency or weight of the evidence presented to the jury, it had options for addressing those concerns, such as vacating or reversing Peppers's convictions or granting a new trial in its capacity as the "thirteenth" juror.[10] What it cannot do—absent extraordinary circumstances not

---

[9] *See Jefferson*, 310 Ga. at 726-27 (holding, *inter alia*, that the defendant could not be retried when the grant of a new trial was based on insufficiency of the evidence to support his conviction); *Priest v. State*, 265 Ga. 399, 399 (1) (456 SE2d 503) (1995) (holding that double jeopardy barred the trial court's grant of a new trial when, in substance, it was based on insufficiency of the evidence to support the appellant's conviction); *see also Burks v. United States*, 437 U.S. 1, 18 (III) (98 SCt 2141, 57 LE2d 1) (1978) (reversing the grant of a new trial based on insufficiency of the evidence to support convictions and remanding for further proceedings); *State v. Silver*, 125 Haw. 1, 9 (III) (A) (249 P3d 1141) (2011) (remanding a case and ordering trial court to enter a judgment of acquittal when reviewing court found there was insufficient evidence to support a conviction). *Cf. State v. Caffee*, 291 Ga. 31, 35 (3) (728 SE2d 171) (2012) (holding that double jeopardy did not bar second trial when the new trial was granted based on an erroneous evidentiary ruling, rather than on sufficiency of the evidence).

[10] *See Priest*, 265 Ga. at 400 (1) ("It makes no difference whether the decision on the insufficiency of the evidence is made by the trial court or the reviewing court. The result is the same. That result is the application of the principle of double jeopardy so as to preclude the State from pursuing a retrial." (punctuation and citation

7

applicable here[11]—is grant a motion for new trial based on a determination that there was insufficient evidence to support the defendant's convictions.

For all these reasons, we vacate the trial court's grant of a new trial and remand the case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded. Rickman and Pipkin, JJ., concur.*

---

omitted); *Massey v. State*, 346 Ga. App. 233, 235, (2) (816 SE2d 100) (2018) ("In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury. OCGA § 5-5-20. The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding. When properly raised in a timely motion, these grounds for a new trial—commonly known as the 'general grounds'—require the trial judge to exercise a broad discretion to sit as a 'thirteenth juror.'" (punctuation and citation omitted)).

[11] *See Jefferson*, 310 Ga. at 727 (noting that "[o]nly in rare circumstances not present here might a retrial be possible following a judicial determination that the evidence presented in support of the crimes charged was insufficient"—*e.g.*, the trial court decided "the evidence was legally insufficient only because of a change in the substantive law after trial, then perhaps a retrial might be possible"); *Levin v. State*, 346 Ga. App. 340, 342-44 (1) (816 SE2d 170) (2018) (holding that double-jeopardy concerns do not preclude the State from retrying a defendant when the evidence presented at trial is rendered insufficient only by a post-trial change in law); *see also Levin v. Morales*, 295 Ga. 781, 785 (764 SE2d 145) (2014) (Blackwell, J., concurring).